IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| Melissa Jacob and Thomas Miller, individually, and as representatives of a Class of Participants and Beneficiaries of the RTX 401(k) Plan,<br><br>    Plaintiffs,<br><br>    v.<br><br>RTX Corporation,<br><br>        and<br><br>The Pension Administration and Investment Committees of the RTX Savings Plan, RTX Corporation Savings Plan, and United Technologies Corp. Employee Savings Plan,<br><br>    Defendants. | Civil Action No. 1:25-cv-1389 |

## CLASS ACTION COMPLAINT

Plaintiffs Melissa Jacob and Thomas Miller, individually and on behalf of all other similarly situated participants in and beneficiaries of the RTX Savings Plan, the RTX Corporation Savings Plan, and the United Technologies Corporation Employee Savings Plan, by their undersigned counsel, bring this class action complaint against the defendants listed herein:

## INTRODUCTION

1.     RTX Corporation ("RTX") is an aerospace and defense conglomerate headquartered in Arlington, Virginia. It was formed by a merger between the aerospace subsidiaries of United Technologies Corporation ("UTC") and Raytheon Company.

2.     On December 31, 2022, the Raytheon Savings and Investment Plan was consolidated with the UTC Employee Savings Plan. The surviving plan, effective January 1, 2023, was named the RTX Corporation Savings Plan. Effective January 1, 2024, the RTX Corporation Savings Plan was renamed the RTX Savings Plan (collectively the "Plan").

3.     During the Class Period, defined below, the Plan held as plan assets the forfeited plan assets of participants whose employment terminated before they became fully vested.

4.     Each year, the Plan's fiduciaries had to decide between using these forfeited assets to either cover participants' plan-related expenses or to cover company matching obligations. In every year since 2019, they chose to use the forfeiture assets to cover company matching obligations, despite the unequivocal fact that this was not in the best interest of the Plan, the Plan's participants, or the Plan's beneficiaries. These actions were unlawful.

5.     Under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001–1193c, the assets of a covered plan "shall be held for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of administering the plan," *id*. § 1103(c)(1). Plan assets "shall never inure to the benefit of any employer." *Id*.

2

6.    In managing a plan and its assets, plan fiduciaries must act "solely in the interest of participants." *Id*. § 1104(a)(1). And they must do so "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." *Id*. § 1104(a)(1)(B).

7.    These fiduciary duties of loyalty and prudence govern the conduct of plan fiduciaries and impose on them "the highest duty known to the law." *Donovan v. Beirwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982).

8.    Further, ERISA requires plan fiduciaries to act in accordance with the plan documents. 29 U.S.C. § 1104(a)(1)(D).

9.    In addition to these broad duties, ERISA prohibits plan fiduciaries from engaging in certain specific actions. Specifically, fiduciaries may not cause the plan to engage in any transaction prohibited by 29 U.S.C. § 1106(a)(1), nor may they "deal with the assets of the plan in [their] own interest." 29 U.S.C. § 1106(a)–(b).

10.    Defendants violated ERISA by 1) failing to act in accordance with the plan documents, 2) breaching their fiduciary duties of loyalty and prudence, 3) using plan assets for the benefit of the employers, 4) dealing with the assets of the plan in their own interest, and 5) causing the plan to engage in prohibited transactions.

11.    In addition to these violations, Defendant RTX also violated ERISA by failing to monitor the Pension Administration and Investment Committees of the RTX Savings Plan, RTX Corporation Savings Plan, and UTC Employee Savings Plans (the "Committee") to ensure that they were performing their delegated fiduciary obligations.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction in this ERISA matter under 28 U.S.C. § 1331 and pursuant to 29 U.S.C. § 1332(e)(1), which provides for federal jurisdiction of actions brought under Title I of ERISA, 29 U.S.C. § 1001 *et seq*.

13.     This Court has personal jurisdiction over Defendants because the plan is administered in this District, they transact business in this District, reside in this District, and have significant contacts with this District.

14.     Venue is appropriate in this District within the meaning of 29 U.S.C. §1132(e)(2) because some or all of the violations of ERISA described in this complaint occurred in this District and some or all of the Defendants reside and may be found in this District.

## PARTIES

15.     Plaintiff Melissa Jacob is a resident of Suffolk County, Massachusetts.

16.     Plaintiff Jacob started working at UTC in 2016 and ended her employment with RTX in 2018.

17.     From 2016–2021, Plaintiff Jacob was a participant in the Plan, as defined under 29 U.S.C. § 1002(7).

18.     Since becoming a Plan participant, Plaintiff Jacob's individual account has been charged with a share of the Plan's administrative expenses. These charges have reduced the monetary value of Plaintiff's individual account.

19.     Plaintiff Thomas Miller is a resident of Palm Beach County, Florida.

20.     Plaintiff Miller began his employment with UTC in 2001 and ended his employment with UTC in 2017, but has since remained a Plan participant.

21.     During the Class Period, defined below, Plaintiff Miller was a participant in the Plan, as defined under 29 U.S.C. § 1002(7).

22.     Since becoming a Plan participant, Plaintiff Miller's individual account has been charged with a share of the Plan's administrative expenses. These charges have reduced the monetary value of Plaintiff's individual account.

23.     The Plan is a defined contribution savings plan subject to the provisions of ERISA.

24.     Defendant RTX Corporation is a Delaware corporation with its headquarters in Arlington, Virginia.

25.     Under the RTX Savings Plan and RTX Corporation Savings Plan, RTX, as Plan Sponsor, acted and acts through its officers, including through the individual members of the Pension Administration and Investment Committee (the "RTX PAIC"), to perform RTX Savings Plan-related fiduciary functions in the course and scope of their business. RTX had and has a duty to appoint and oversee those appointees, and accordingly had a concomitant fiduciary duty to monitor, supervise, and remove those appointees under appropriate circumstances. For these reasons, RTX was and is a fiduciary of the RTX Savings Plan and RTX Corporation Savings Plan, within the meaning of 29 U.S.C. § 1002(21)(A).

26.     Under the RTX Savings Plan and RTX Corporation Savings Plan, the RTX PAIC had and has the delegated responsibility for the administration of the RTX Savings Plan. The RTX PAIC members were and are fiduciaries with day-to-day administration and operation of the RTX Savings Plan under 29 U.S.C. § 1002(21)(A). The RTX PAIC has the responsibility and discretionary authority to control the operation, management, and administration of the RTX Savings Plan, with all powers necessary to properly fulfill such responsibilities. For these reasons, the RTX PAIC was and is a fiduciary of the RTX Savings Plan, within the meaning of 29 U.S.C. § 1002(21)(A).

27.     Under the UTC Employee Savings Plan, the Pension Administration and Investment Committee ("UTC PAIC"), as Plan Administrator, had the delegated responsibility for the administration of the UTC Employee Savings Plan. The UTC PAIC members were fiduciaries with day-to-day administration and operation of the UTC Employee Savings Plan under 29 U.S.C. § 1002(21)(A). The UTC PAIC had the responsibility and discretionary authority to control the operation, management, and administration of the UTC Employee Savings Plan, with all powers necessary to properly fulfill such responsibilities. For these reasons, the UTC PAIC was a fiduciary of the UTC Employee Savings Plan, within the meaning of 29 U.S.C. § 1002(21)(A).

28.     Under the UTC Employee Savings Plan, RTX, as the successor to the Plan Sponsor United Technologies Corporation, acted through its officers, including through the individual members of the UTC PAIC, to perform UTC Employee Savings Plan-related fiduciary functions in the course and scope of their business. RTX, as successor to United Technologies Corporation, had a duty to designate members of the UTC PAID and to oversee those appointees, and accordingly had a concomitant fiduciary duty to monitor, supervise, and remove those appointees under appropriate circumstances. For these reasons, RTX was a fiduciary of the UTC Employee Savings Plan, within the meaning of 29 U.S.C. § 1002(21)(A).

## FACTUAL ALLEGATIONS

29.     As required by 29 U.S.C. § 1102(a)(1), the Plan is maintained under a written document. The governing Plan documents during the Class Period were: (1) United Technologies Corporation Employee Savings Plan, Amended and Restated, effective January 1, 2015; (2) RTX Corporation Savings Plan, effective January 1, 2023; and (3) RTX Savings Plan, Amended and Restated, effective January 1, 2024.

30.     In accordance with 29 U.S.C. § 1103(a), the assets of the Plan are held in a trust fund.

31.     As an individual account, defined contribution retirement plan, the Plan "provides for an individual account for each participant and for benefits solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeiture of accounts of other participants which may be allocated to such participant's account." 29 U.S.C. § 1002(34).

32.     The Plan is funded by a combination of wage withholdings by Plan participants and company matching contributions that are deposited into the Plan's trust fund. Upon their deposit into the Plan's trust fund, all participant contributions and company matching contributions become assets of the Plan.

33.     The Plan provided and provides that RTX, and formerly UTC, will make matching contributions and company automatic contributions.

34.     Participants were and are immediately fully vested in their contributions to the Plan.

35.     Participants only became and become vested in company matching contributions and company automatic contributions after certain prerequisites are satisfied. Generally, participants become and became vested in the matching contributions and company automatic contributions after the completion of two years of service.

36.     Upon their deposit into the Plan's trust fund, all participant contributions, company matching contributions, and company automatic contributions become assets of the Plan.

37.     When a participant has a break in service prior to the vesting of their company matching contributions or company automatic contributions, the participant forfeits the balance of

unvested contributions in his or her individual account and Defendants exercise discretionary authority and control over how these Plan assets (called "forfeitures") are thereafter reallocated.

38.    Each version of the Plan required and requires that "**all forfeitures under the Plan shall be used** to reduce future Employer Contributions . . . **and to pay administrative expenses** in accordance with Section 11.4." (emphasis added).

39.    Section 11.4, Expenses, sets forth the types of "reasonable expenses of administering the Plan," including, e.g., compensation for the Trustee, attorneys, advisors, actuaries, fiduciaries, and service providers.

40.    Using the forfeitures "to reduce" employer contributions is always in the best interest of RTX because that option allows RTX to contribute less new money to the plan.

41.    If there is a risk that RTX may be financially unable to satisfy its contribution obligations, this option might also be in the best interests of participants because it would provide participants with employer contributions that they might not otherwise receive.

42.    For each year between 2019 and 2024, RTX and UTC had billions in net income and were under no risk of defaulting on their contribution obligations to the Plan. Nevertheless, throughout that period, Defendants consistently acted solely in their own self-interests and failed to consider the interests of the Plan and its participants.

43.    Absent a risk that RTX and UTC would be unable to satisfy their contribution obligations, Defendants' use of the forfeitures "to reduce" employer contributions is not in the best interest of participants, as participants then pay for *all* of the Plan's expenses out of their individual accounts, leaving participants with less assets for distribution or investment.

44.    Conversely, absent a risk that RTX and UTC would be unable to satisfy its contribution obligations, Defendants' use of forfeitures "to pay administrative expenses" is in the

participants' best interest, as it reduces or eliminates amounts otherwise charged to participant's accounts to cover these expenses, leaving participants with more assets for distribution or investment.

45.    In deciding how to use the Plan's forfeited assets, Defendants are presented with a conflict of interest in their administration of the Plan.

46.    Although ERISA requires Defendants to defray the Plan's expenses, *see* 29 U.S.C. § 1104(a)(1)(A)(ii), and although the Plan states that Defendants shall use the forfeited funds to pay Plan expenses, since 2019 Defendants have never used any forfeited funds for that purpose.

47.    Instead, since 2019 Defendants consistently chose to use the forfeitures for the benefit of RTX and UTC and to the detriment of the Plan and its participants. By choosing to allocate forfeitures to RTX and UTC's benefit, Defendant's caused participants to pay an allocation of the Plan's administrative expenses from their individual accounts. Direct amounts paid by participants were as follows:

| Year | Amount of Administrative Expenses Paid |
|------|----------------------------------------|
| 2019 | $4,708,000 |
| 2020 | $4,690,000 |
| 2021 | $4,568,000 |
| 2022 | $3,116,000 |
| 2023 | $8,040,000 |
| **Total** | **$25,122,000**[1] |

48.    Since 2019 all participant accounts, including Plaintiffs' accounts, have been charged with administrative expenses.

---

[1] Information for 2024 is not currently available to Plaintiffs but could be obtained through discovery.

49.    The deduction of administrative expenses from the participants' accounts reduced the funds available to participants for distribution and/or investment and deprived the Plan of funds that it otherwise would have earned on the amounts deducted. Therefore, the participants' account balances would have been greater had Defendants elected to use forfeitures to pay Plan expenses.

50.    For each year during the Class Period, UTC and RTX had sufficient cash and equivalents on hand to satisfy its contribution obligations to the Plan. Nevertheless, throughout that period, Defendants consistently decided to allocate forfeitures solely in their own self-interests and failed to consider the interests of the Plan and its participants.

51.    Rather than defray any part of the Plan's administrative expenses charged to participants, since 2019, Defendants utilized forfeited funds to reduce the corporations' matching contributions in the amounts that follow:

| Year | Amount Contributions Were Reduced by Forfeitures |
|------|--------------------------------------------------|
| 2019 | $3,300,000 |
| 2020 | $2,800,000 |
| 2021 | $3,900,000 |
| 2022 | $2,300,000 |
| 2023 | $6,300,000 |
| **Total** | **$18,600,000**[2] |

52.    Moreover, since 2019, rather than defray any part of the Plan's administrative expenses charged to participants, Defendants failed to exercise their discretion over the Plan's forfeitures, and violated the Plan's express language that forfeitures "shall be used . . . to pay

---

[2] Information for 2024 is not currently available to Plaintiffs but could be obtained through discovery.

administrative expenses" by leaving unallocated forfeitures at the year's end in the amounts that follow: [3]

| Year | Amount of Unallocated Forfeitures at the Years End |
|---|---|
| 2019 | $1,500,000 |
| 2020 | $2,400,000 |
| 2021 | $3,400,000 |
| 2022 | $4,200,000 |
| 2023 | $6,600,000 |

## CLASS ACTION ALLEGATIONS

53.     29 U.S.C. § 1132(a)(2) authorizes any participant or beneficiary of the Plan to bring an action individually on behalf of the Plan to enforce a breaching fiduciary's liability to the Plan under 29 U.S.C. § 1109(a).

54.     In acting in this representative capacity and to enhance the due process protections of unnamed participants and beneficiaries of the Plan, as an alternative to direct individual actions on behalf of the Plan under 29 U.S.C. § 1132(a)(2), Plaintiffs seek to certify this action as a class action on behalf of all Plan participants and beneficiaries. Plaintiffs seek to certify, and to be appointed as representative of, the following class:

> **Class**: All participants and beneficiaries of RTX Savings Plan, RTX Corporation Savings Plan, and the UTC Employee Savings Plan (excluding Defendants or any participant/beneficiary who is a fiduciary to the Plan) beginning six years prior to the date of filing and running through the date of judgment ("Class Period").

55.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1)**. The class contains over 100,000 members and is so large that joinder of all its members is impracticable.

56.     **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3)**. Numerous common questions of law and fact exist as to Plaintiffs and the other

---

[3] Information for 2024 is not currently available to Plaintiffs but could be obtained through discovery.

Class members because Defendants owed fiduciary duties to the Plan and took the actions and omissions alleged as to the Plan and not as to any individual participant. These common questions predominate over individualized issues. Common questions of law and fact include but are not limited to the following:

a.   Whether Defendants are fiduciaries liable for the remedies provided by 29 U.S.C. § 1109(a);

b.   Whether Defendants failed to follow the terms of the Plan;

c.   Whether Defendants breached their fiduciary duties of prudence and loyalty to the Plan;

d.   Whether Defendants caused the Plan to engage in prohibited transactions;

e.   Whether the Defendants allowed plan assets to inure to the benefit of RTX;

f.   Whether Defendants dealt with the assets of the plan in its own interest;

g.   What are the losses to the Plan resulting from each of the ERISA violations described in b–f; and

h.   What Plan-wide equitable and other relief the Court should impose in light of Defendants' breach of duty.

57.   **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiffs' claims are typical of the other Class members because (a) Plaintiffs were participants in the Plan during the time Class Period, and (b) Defendants' misconduct harmed all participants in the Plan.

58.   **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiffs will adequately represent the Class because they (a) were/are participants in the Plan during the Class Period, (b) have no interest that conflicts with the Class, (c) are committed to the

vigorous representation of the Class, and (d) have engaged experienced and competent lawyers to represent the Class.

59.     **Risk of Inconsistent/Dispositive Adjudications – Federal Rule of Civil Procedure 23(b)(1).** Certification under Federal Rule of Civil Procedure 23(b)(1) is appropriate, because prosecution of separate actions for these breaches of fiduciary duties by individual participants and beneficiaries would create the risk of (a) inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants concerning their discharge of fiduciary duties to the Plan and personal liability to the Plan under 29 U.S.C. § 1109(a), or (b) adjudications by individual participants and beneficiaries regarding these breaches of fiduciary duties and remedies for the Plan would, as a practical matter, be dispositive of the interests of the participants and beneficiaries who are not parties to the adjudication, or would substantially impair those participants' and beneficiaries' ability to protect their interests.

60.     **Declaratory and Injunctive Relief - Federal Rule of Civil Procedure 23(b)(2).** Certification under Federal Rule of Civil Procedure 23(b)(2) is appropriate because, as alleged in this complaint, Defendants have acted or refused to act on grounds that apply generally to the Class, so that final injunctive or corresponding declaratory relief is appropriate respecting the Class as a whole.

61.     **Damages – Federal Rule of Civil Procedure 23(b)(3).** Certification under Federal Rule of Civil Procedure 23(b)(3) is appropriate because (a) as discussed above, common issues predominate individual issues, and (b) a class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. Specifically, the damages or other financial detriment suffered by Plaintiffs and each of the other Class Members are small compared to the

burden and expense that would be required to individually litigate their claims against Defendants, rendering it impracticable for Class Members to individually seek redress for Defendants' wrongful conduct. Moreover, even if Class Members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefit of single adjudication, economy of scale, and comprehensive supervision by a single court.

62.    Plaintiffs' attorneys are experienced in complex ERISA and class litigation and will adequately represent the Class.

63.    The claims brought by Plaintiffs arise from fiduciary breaches as to the Plan in its entirety and do not involve mismanagement of individual accounts, and thus internal exhaustion of these claims are not required.

**CLAIMS**

**FIRST CLAIM FOR RELIEF**
**Breach of ERISA Duty to Act in**
**Accordance With Plan Documents**
**(29 U.S.C. § 1104(a)(1)(D))**

64.    Plaintiffs reallege and incorporate herein by reference each allegation contained in paragraphs 1–63 as though fully set forth herein.

65.    Plaintiffs assert this claim on behalf of the Class.

66.    Defendants are fiduciaries of the Plan under 29 U.S.C. §§ 1002(21)(A) and/or 1102(a)(1).

67.    Pursuant to 29 U.S.C. § 1104(a)(1)(D), Defendants were required to discharge their duties to the Plan "in accordance with the documents and instruments governing the plan insofar

as such documents and instruments are consistent with the provisions of this subchapter and subchapter III."

68.     Since 2019, Defendants have repeatedly breached their duty to act in accordance with the Plan documents by failing to use the Plan's unallocated forfeiture funds to pay Plan expenses.

69.     As a direct and proximate result of Defendants' fiduciary breaches described in this count, the Plan's assets were decreased, and its participants and their beneficiaries incurred avoidable expense deductions to their individual accounts. These injuries caused the Plan to suffer losses in the amount of the Plan assets that were substituted for RTX and/or UTC's obligated employer contributions to the Plan and the lost investment returns on those assets.

70.     Each Defendant knowingly participated in the other Defendant's breach, knowing that such acts were a breach. Each Defendant's breach enabled the other Defendant to commit a breach of its duty. And, each Defendant, knowing of the other Defendant's breach, failed to make reasonable efforts under the circumstances to remedy the breach. For these independent reasons, each Defendant is liable for the losses caused by the breach of its co-fiduciary under 29 U.S.C. § 1105(a).

71.     Pursuant to 29 U.S.C. § 1109, Defendants are personally liable and are subject to appropriate equitable and remedial relief.

## SECOND CLAIM FOR RELIEF
### Breach of ERISA Duty of Loyalty
### (29 U.S.C. § 1104(a)(1)(A))

72.     Plaintiffs reallege and incorporate herein by reference each allegation contained in contained in paragraphs 1–63 as though fully set forth herein.

73.     Plaintiffs assert this claim on behalf of the Class.

74.     Defendants are fiduciaries of the Plan under 29 U.S.C. §§ 1002(21)(A) and/or 1102(a)(1).

75.     Pursuant to 29 U.S.C. § 1104(a)(1)(A), Defendants were required to discharge their duties to the Plan "solely in the interest of the participants and beneficiaries" and "for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan."

76.     Since 2019, Defendants have repeatedly breached their duty of loyalty with respect to their control and management of the Plan's assets by invariably choosing to use the Plan's forfeited funds for the benefit of RTX and/or UTC rather than solely in the interest of the participants and their beneficiaries.

77.     Instead of using forfeited funds in the interest of participants by reducing or eliminating the administrative expenses charged to their individual accounts, Defendants chose to use these Plan assets for the purpose of reducing RTX and UTC's own contributions to the Plan, saving RTX and UTC millions of dollars each year at the Plan's and its participants' expense.

78.     As a direct and proximate result of Defendants' fiduciary breaches described in this count, the Plan's assets were decreased, and its participants and their beneficiaries incurred avoidable expense deductions to their individual accounts. These injuries caused the Plan to suffer losses in the amount of the Plan assets that were substituted for RTX and/or UTC's obligated employer contributions to the Plan and the lost investment returns on those assets.

79.     Each Defendant knowingly participated in the other Defendant's breach, knowing that such acts were a breach. Each Defendant's breach enabled the other Defendant to commit a breach of its duty. And, each Defendant, knowing of the other Defendant's breach, failed to make reasonable efforts under the circumstances to remedy the breach. For these independent reasons,

each Defendant is liable for the losses caused by the breach of its co-fiduciary under 29 U.S.C. § 1105(a).

80.     Pursuant to 29 U.S.C. § 1109, Defendants are personally liable and are subject to appropriate equitable and remedial relief.

### THIRD CLAIM FOR RELIEF
**Breach of ERISA Duty of Prudence**
**(29 U.S.C. § 1104(a)(1)(B))**

81.     Plaintiffs reallege and incorporate herein by reference each allegation contained in contained in paragraphs 1–63 as though fully set forth herein.

82.     Plaintiffs assert this claim on behalf of the Class.

83.     Defendants are fiduciaries of the Plan under 29 U.S.C. §§ 1002(21)(A) and/or 1102(a)(1).

84.     Pursuant to 29 U.S.C. § 1104(a)(1)(B), Defendants were required to discharge their duties with respect to the Plan "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."

85.     Since 2019, Defendants have repeatedly breached their duty of prudence with respect to their control and management of the Plan's assets.

86.     In deciding how to allocate forfeitures, Defendants utilized an imprudent and flawed process. Despite the conflict of interest presented by this decision, Defendants failed to undertake any reasoned and impartial decision-making process to determine which use of the Plan's forfeited funds was in the best interest of the Plan's participants. Instead, without any consideration of what was in the interest of the Plan's participants and their beneficiaries, Defendants invariably chose to use the Plan's forfeited funds for the benefit of RTX and/or UTC.

17

87.    A prudent fiduciary would have established a process for determining, after considering all relevant factors, which use of plan assets better served the Plan's participants and their beneficiaries. Defendants failed to do so.

88.    As a direct and proximate result of Defendants' fiduciary breaches described in this count, the Plan's assets were decreased, and its participants and their beneficiaries incurred avoidable expense deductions to their individual accounts. These injuries caused the Plan to suffer losses in the amount of the Plan assets that were substituted for RTX and/or UTC's obligated contributions to the Plan and the lost investment returns on those assets.

89.    Each Defendant knowingly participated in the other Defendant's breach, knowing that such acts were a breach. Each Defendant's breach enabled the other Defendant to commit a breach of its duty. And, each Defendant, knowing of the other Defendant's breach, failed to make reasonable efforts under the circumstances to remedy the breach. For these independent reasons, each Defendant is liable for the losses caused by the breach of its co-fiduciary under 29 U.S.C. § 1105(a).

90.    Pursuant to 29 U.S.C. § 1109, Defendants are personally liable and are subject to appropriate equitable and remedial relief.

**FOURTH CLAIM FOR RELIEF**
**Breach of ERISA's Anti-Inurement Provision**
**(29 U.S.C. § 1103(c)(1))**

91.    Plaintiffs reallege and incorporate herein by reference each allegation contained in contained in paragraphs 1–63 as though fully set forth herein.

92.    Plaintiffs assert this claim on behalf of the Class.

93.    Pursuant to 29 U.S.C. § 1103(c)(1), "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purpose of providing benefits to

participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan."

94.    The company's contributions that a participant forfeits because that participant took a break in service prior to those contributions fully vesting are assets of the Plan.

95.    Defendants caused the assets of the plan to inure to the benefit of RTX and UTC in violation of 29 U.S.C. 1103(c)(1) by deciding to use these Plan assets as a substitute for those companies' obligated contributions to the Plan for the purpose of saving the companies tens of millions of dollars in contribution expenses.

96.    As a direct and proximate result of Defendants' fiduciary breaches described in this count, the Plan's assets were decreased, and its participants and their beneficiaries incurred avoidable expense deductions to their individual accounts. These injuries caused the Plan to suffer losses in the amount of the Plan assets that were substituted for the companies' obligated employer contributions to the Plan and the lost investment returns on those assets.

97.    Each Defendant knowingly participated in the other Defendant's breach, knowing that such acts were a breach. Each Defendant's breach enabled the other Defendant to commit a breach of its duty. And, each Defendant, knowing of the other Defendant's breach, failed to make reasonable efforts under the circumstances to remedy the breach. For these independent reasons, each Defendant is liable for the losses caused by the breach of its co-fiduciary under 29 U.S.C. § 1105(a).

98.    Pursuant to 29 U.S.C. § 1109, Defendants are personally liable and are subject to appropriate equitable and remedial relief.

## FIFTH CLAIM FOR RELIEF
### Prohibited Transactions
### (29 U.S.C. § 1106(a)(1))

99.    Plaintiffs reallege and incorporate herein by reference each allegation contained in paragraphs 1–63 as though fully set forth herein.

100.    Plaintiffs assert this claim on behalf of the Class

101.    Defendants are fiduciaries of the Plan under 29 U.S.C. §§ 1002(21)(A) and/or 1102(a)(1).

102.    Pursuant to 29 U.S.C. § 1106(a)(1), "[a] fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect . . . exchange . . . of any property between the plan and a party in interest . . . or use by or for the benefit of a party in interest, of any assets of the plan."

103.    Because RTX and the Committee are fiduciaries of the Plan and RTX is the employer of Plan participants, both are parties in interest under 29 U.S.C. § 1002(14).

104.    By choosing to use the Plan's forfeited funds, which are property of the Plan, to defray RTX and/or UTC's obligated employer contributions to the Plan, Defendants caused the Plan to engage in transactions that constituted a direct or indirect exchange of existing Plan property to RTX and/or UTC, and/or caused the use of Plan assets by or for the benefit of the companies.

105.    As a direct and proximate result of Defendants' fiduciary breaches described in this count, the Plan's assets were decreased, and its participants and their beneficiaries incurred avoidable expense deductions to their individual accounts. These injuries caused the Plan to suffer losses in the amount of the Plan assets that were substituted for the Company's obligated contributions to the Plan and the lost investment returns on those assets.

106.    Each Defendant knowingly participated in the other Defendant's breach, knowing that such acts were a breach. Each Defendant's breach enabled the other Defendant to commit a breach of its duty. And, each Defendant, knowing of the other Defendant's breach, failed to make reasonable efforts under the circumstances to remedy the breach. For these independent reasons, each Defendant is liable for the losses caused by the breach of its co-fiduciary under 29 U.S.C. § 1105(a).

107.    Pursuant to 29 U.S.C. § 1109, Defendants are personally liable and are subject to appropriate equitable and remedial relief.

### SIXTH CLAIM FOR RELIEF
**Prohibited Transactions**
**(29 U.S.C. § 1106(a)(1))**

108.    Plaintiffs reallege and incorporate herein by reference each allegation contained in paragraphs 1–63 as though fully set forth herein.

109.    Plaintiffs assert this claim on behalf of the Class.

110.    Defendants are fiduciaries of the Plan under 29 U.S.C. §§ 1002(21)(A) and/or 1102(a)(1).

111.    Pursuant to 29 U.S.C. § 1106(a)(1), "[a] fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect . . . furnishing of goods services, or facilities between the plan and a party in interest."

112.    Service providers of the Plan are parties in interest under 29 U.S.C. § 1002(14). Such service providers include, but are not limited to, the Plan's recordkeeper and trustee.

113.    By choosing to use the Plan's forfeited funds, which are property of the Plan, to defray RTX and/or UTC's obligated employer contributions to the Plan, Defendants caused the

Plan to engage in transactions that constituted a direct or indirect furnishing of goods services, or facilities between the Plan and the Plan's service providers.

114.    As a direct and proximate result of Defendants' fiduciary breaches described in this count, the Plan's assets were decreased, and its participants and their beneficiaries incurred avoidable expense deductions to their individual accounts. These injuries caused the Plan to suffer losses in the amount of the Plan assets that were substituted for RTX and/or UTC's obligated employer contributions to the Plan and the lost investment returns on those assets.

115.    Each Defendant knowingly participated in the other Defendant's breach, knowing that such acts were a breach. Each Defendant's breach enabled the other Defendant to commit a breach of its duty. And, each Defendant, knowing of the other Defendant's breach, failed to make reasonable efforts under the circumstances to remedy the breach. For these independent reasons, each Defendant is liable for the losses caused by the breach of its co-fiduciary under 29 U.S.C. § 1105(a).

116.    Pursuant to 29 U.S.C. § 1109, Defendants are personally liable and are subject to appropriate equitable and remedial relief.

<u>**SEVENTH CLAIM FOR RELIEF**</u>
**Prohibited Transactions**
**(29 U.S.C. § 1106(b)(1))**

117.    Plaintiffs reallege and incorporate herein by reference each allegation contained in paragraphs 1–63 as though fully set forth herein.

118.    Plaintiffs assert this claim on behalf of the Class.

119.    Defendants are fiduciaries of the Plan under 29 U.S.C. §§ 1002(21)(A) and/or 1102(a)(1).

120.    Pursuant to 29 U.S.C. § 1106(b), "[a] fiduciary with respect to a plan shall not," among other things, "deal with the assets of the plan in his own interest or for his own account."

121.    By utilizing forfeited Plan assets as a substitute for the Company's obligated employer contributions to the Plan for the purpose of saving RTX and/or UTC millions of dollars, Defendants dealt with the assets of the Plan in their own interest and for their own account.

122.    As a direct and proximate result of Defendants' fiduciary breaches described in this count, the Plan's assets were decreased, and its participants and their beneficiaries incurred avoidable expense deductions to their individual accounts. These injuries caused the Plan to suffer losses in the amount of the Plan assets that were substituted for RTX and/or UTC's obligated employer contributions to the Plan and the lost investment returns on those assets.

123.    Each Defendant knowingly participated in the other Defendant's breach, knowing that such acts were a breach. Each Defendant's breach enabled the other Defendant to commit a breach of its duty. And, each Defendant, knowing of the other Defendant's breach, failed to make reasonable efforts under the circumstances to remedy the breach. For these independent reasons, each Defendant is liable for the losses caused by the breach of its co-fiduciary under 29 U.S.C. § 1105(a).

124.    Pursuant to 29 U.S.C. § 1109, Defendants are personally liable and are subject to appropriate equitable and remedial relief.

### EIGHTH CLAIM FOR RELIEF
**Failure to Monitor Other Fiduciaries**

125.    Plaintiffs reallege and incorporate herein by reference each allegation contained in paragraphs 1–63 as though fully set forth herein.

126.    Plaintiffs assert this claim on behalf of the Class.

127.    This claim is asserted against Defendant RTX only.

128.    Defendant RTX is a fiduciary of the Plan under 29 U.S.C. §§ 1002(21)(A) and/or 1102(a)(1).

129.    Defendant RTX had the authority to appoint, oversee, and remove members or individuals of the Committee responsible for deciding how to use the Plan's forfeited assets. Defendant RTX knew or should have known that these fiduciaries had critical responsibilities for the Plan.

130.    In light of this authority, Defendant RTX had a duty to monitor the Committee to ensure that they were adequately performing their fiduciary obligations, and to take prompt and effective action to protect the Plan in the event that these individuals were not fulfilling those duties.

131.    Defendant RTX breached its fiduciary monitoring standard with respect to the Committee by, among other things, (a) failing to monitor the Committee's management and use of forfeited funds in the Plan, and (b) by failing to take steps to ensure that the Committee was discharging its duties with respect to Plan assets for the sole benefit of Plan participants and beneficiaries.

132.    As a direct result of RTX's breach of its fiduciary duty to monitor, the Plan suffered losses.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray the Court enter judgement against Defendants on all respective claims against them and request that the Court award the following relief:

A. An order certifying the Class as requested herein, designating Plaintiffs as Class Representatives, and appointing Plaintiffs' attorneys as Class Counsel;

B. A Declaration that the Defendants are Plan fiduciaries and have breached their fiduciary duties under ERISA as described in Counts One, Two, and Three;

C. A Declaration that the Defendants engaged in unlawful conduct as described in Counts Four through Seven;

D. A Declaration that the Defendant RTX breached its duty to monitor other fiduciaries as described in Count Eight;

E. An Order compelling the Defendants to make good to the Plan all losses to the Plan resulting from Defendants' breaches of ERISA, including restoring to the Plan all losses, restoring to the Plan all profits Defendants made through use of the Plan's assets, and restoring to the Plan all profits which its participants would have made if the defendants had fulfilled their obligations under ERISA;

F. An Order requiring Defendants to disgorge all profits received from, or in respect of, the Plan, and/or equitable relief pursuant to 29 U.S.C. § 1132(a)(2) in the form of an accounting for profits, imposition of constructive trust, or surcharge against Defendants as necessary to effectuate relief, and to prevent Defendants' unjust enrichment;

G. An Order enjoining Defendants from any further violation of their ERISA fiduciary responsibilities, obligations, and duties relating to the reallocation of the Plans forfeited assets;

H. Other equitable relief to redress Defendants' illegal practices and to enforce the provisions of ERISA as may be appropriate, including appointment of an independent fiduciary or fiduciaries to run the Plan and removal of plan fiduciaries deemed to have breached their fiduciary duties;

I. An award of pre-judgment interest;

J.  An award of attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g) and the common

fund doctrine; and

K.  Such other and further relief as the Court deems equitable and just.

DATED: August 22, 2025                     Respectfully submitted,


*/s/ Steven T. Webster*
Steven T. Webster (VSB No. 31975)
**WEBSTER BOOK LLP**
2300 Wilson Blvd., Suite 728
Arlington, VA 22201
Telephone: (888) 987-9991
stw@websterbook.com

Adam J. Levitt*
Daniel R. Ferri*
Elijah G. Savage*
**DICELLO LEVITT LLP**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Telephone: (312) 214-7900
alevitt@dicellolevitt.com
dferri@dicellolevitt.com
esavage@dicellolevitt.com

Sharon S. Almonrode*
**THE MILLER LAW FIRM**
950 West University Drive, Suite 300
Rochester, Michigan 48307
Telephone: (248) 841-2200
ssa@millerlawpc.com

***Counsel for Plaintiffs and the
Proposed Class***

* *Pro hac vice* forthcoming