IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| MELISSA JACOB,<br>THOMAS MILLER, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | 1:25-cv-1389 (LMB/WBP) |
| v. | ) | |
| | ) | |
| RTX CORPORATION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Plaintiffs Melissa Jacob ("Jacob") and Thomas Miller ("Miller") (collectively, the "plaintiffs") bring this eight-count putative class action against RTX Corporation ("RTX"), Pension Administration and Investment Committee of the RTX Savings Plan, Pension Administration and Investment Committee of the RTX Corporation Savings Plan, and Pension Administration and Investment Corporation of the United Technologies Corporation Employee Savings Plan (collectively, the "defendants"), alleging that defendants' use of forfeited employer contributions in the RTX Savings Plan ("Plan") violated the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. Defendants have filed a Motion to Dismiss for failure to state a claim. The Court has heard argument on this motion. For the reasons stated below, defendants' Motion to Dismiss will be GRANTED.

## I. BACKGROUND

### A. Factual Background

Defendant RTX is an aerospace and defense conglomerate formed by a merger between the aerospace subsidiaries of United Technologies Corporation ("UTC") and Raytheon Company ("Raytheon"). [Dkt. No. 1] at ¶ 1. RTX sponsors and administers the Plan, a "401(k) defined

contribution, individual account, employee pension benefit plan" under ERISA, 29 U.S.C. §§ 1002(2)(A) and 1002(34).[1] [Dkt. No. 27] at 2. As such, the Plan "provides for an individual account for each participant and for benefits [based] solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeiture[s] of accounts of other participants which may be allocated to such participant's account." [Dkt. No. 1] at ¶ 31 (quoting 29 U.S.C. § 1002(34)). Defendant Pension Administration and Investment Committee of the RTX Savings Plan (the "Committee") serves as the Administrator of the Plan.[2] Id. at ¶ 27. Defendants are fiduciaries of the Plan within the meaning of 29 U.S.C. § 1002(21)(A).[3] Defendants do not contest their fiduciary status under the Plan.

Plaintiff Melissa Jacob worked at RTX from 2016 to 2018 and was a participant in the Plan from 2016 to 2021.[4] Id. at ¶¶ 16-18. Plaintiff Thomas Miller worked at RTX from 2001 to 2017 and has since remained a participant of the Plan.[5] Id. at ¶¶ 20-22. Jacob and Miller bring this action

---

[1] On December 31, 2002, following the merger between UTC and Raytheon, the Raytheon Savings and Investment Plan was consolidated with the UTC Employee Savings plan. [Dkt. No. 1] at ¶ 2. The surviving plan, effective January 1, 2023, was named the RTX Corporation Savings Plan. Id. Effective January 1, 2024, the RTX Corporation Savings Plan was renamed the RTX Savings Plan. Id.

[2] Defendants Pension Administration and Investment Committee of the RTX Corporation Savings Plan and Pension Administration and Investment Committee of the United Technologies Corp. Employee Savings Plan are former Plan administrators. Id. at ¶¶ 26-27.

[3] 29 U.S.C. § 1002(21)(A) states that "a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan."

[4] Jacob began her employment at UTC in 2016 and ended her employment with RTX in 2018, following the merger between UTC and Raytheon. [Dkt. No. 1] at ¶ 16.

[5] Miller began his employment at UTC in 2001 and ended his employment with UTC in 2017. Id. at ¶ 20.

individually as well as on behalf of the following putative class estimated to include at least 100,000 members:

> "[a]ll participants and beneficiaries of the RTX Savings Plan, RTX Corporation Savings Plan, and the UTC Employee Savings Plan (excluding [d]efendants or any participant/beneficiary who is a fiduciary to the Plan) beginning six years prior to the date of filing and running through the date of judgment[.]"

Id. at ¶ 54.

The Plan is "maintained under a written document" pursuant to 29 U.S.C. § 1102(a)(1). Id. at ¶ 29. During the relevant class period, the governing Plan documents were: (1) United Technologies Corporation Employee Savings Plan, Amended and Restated, effective January 1, 2015; (2) RTX Corporation Savings Plan, effective January 1, 2023; and (3) RTX Savings Plan, Amended and Restated, effective January 1, 2024. Id. The operative document, relevant to the pleadings here, is the RTX Savings Plan, Amended and Restated, effective January 1, 2024.[6] See [Dkt. No. 27] at 2 n.3.

"The Plan is funded by a combination of wage withholdings by Plan participants and company matching contributions that are deposited into the Plan's trust fund." [Dkt. No. 1] at ¶ 32. "Upon their deposit into the Plan's trust fund, all participant contributions and company matching contributions become assets of the Plan." Id. Participants are "immediately and fully vested in their contributions to the Plan[;]" however, participants generally "only . . . become

---

[6] This Court can consider the written Plan document in the context of defendants' Motion to Dismiss because (1) that document is incorporated by reference into plaintiffs' Complaint, (2) it is central to plaintiffs' claims, and (3) no party disputes its authenticity. Clark v. BASF Corp., 142 F.App'x 659, 660-61 (4th Cir. 2005). See also [Dkt. No. 27] at 2 n.3 (plaintiffs asserting that defendants "filed a true and correct copy of relevant excerpts of the operative Plan [d]ocument" and agreeing that "the Court may properly consider the Plan [d]ocument in resolving [d]efendants' pending motion.").

vested in . . . company matching contributions" after the "completion of two years of service."[7] Id. at ¶¶ 34-35. If a participant has a break in service before the full vesting of RTX's matching contributions, the participant "forfeits the balance of unvested contributions in his or her individual account" and defendants "exercise discretionary authority and control over how these Plan assets (called "forfeitures") are thereafter reallocated. Id. at ¶ 37.

The Plan's Sections 8.3 and 5.13 are the relevant provisions governing how forfeited employer contributions can be used in the Plan. Section 8.3 first provides that such forfeitures "shall" be used to restore the accounts of Plan participants who have terminated employment but are later reemployed:

> Upon reemployment by the Employer or an Affiliate, a former Participant who incurred a forfeiture and who is reemployed, shall have the value of such Participant's Employer Account, Company Retirement Contribution Account, Company Automatic Contribution Account and ESOP Account restored only if such Participant's Participation Service is restored under Section 2.60. . . . The value of the Participant's [employer contribution accounts] . . . **shall be derived first from any unallocated forfeitures under the Plan** and to the extent this is insufficient, additional Employer contributions as required to restore the value of the Participant's Employer Account, Company Retirement Contribution Account, Company Automatic Contribution Account or ESOP Account.

> [Dkt. No. 24-2] at 27 (emphasis in original).

With the exception provided under Section 8.3, Section 5.13 expressly authorizes using forfeitures to reduce future employer contributions and to pay administrative expenses:

> Except as provided in Section 8.3, **all forfeitures under the Plan shall be used to reduce future Employer Contributions** (including, without limitation, ESOP Contributions, Company Retirement Contributions, and Company Automatic Contributions) **and to pay administrative expenses in accordance with Section 11.4 of the Plan**, and shall not be used to increase the amounts allocated to the Accounts of the Participants.

---

[7] This fact is not disputed by defendants, although they offer additional clarification: "[e]mployer contributions made prior to 2023 vest over varying periods of time depending on the RTX [e]mployer and whether the employee is covered by a collective bargaining agreement—some immediately vest, while others vest over three to six years." [Dkt. No. 24] at 1-2.

Id. at 25 (emphasis added).

Lastly, Section 11.4 provides that the Committee "shall be authorized to direct that the reasonable expenses of administering the Plan . . . be paid out of the Trust Fund (except to the extent such expenses have been paid by the Employers)." Id. at 28.

The core of this dispute is plaintiffs' claim that—despite the requirements of the Plan document and ERISA—defendants breached their fiduciary duties when they used the forfeitures to offset future employer contributions rather than to cover administrative expenses. [Dkt. No. 1] at ¶¶ 46-47. More specifically, plaintiffs allege that Plan participants have paid a total of $25,122,000.00 in administrative expenses, in addition to amounts from 2024 which defendants have yet to disclose; that in the same time period, defendants used forfeitures to reduce their matching contributions by a total of $18,600,000.00, in addition to an undisclosed amount in 2024; and that defendants left millions of dollars of unallocated forfeitures at year's end during the relevant class period. Id. at ¶¶ 46-52. Plaintiffs allege that defendants' course of action "reduced the funds available to participants for distribution and/or investment and deprived the Plan of funds that it otherwise would have earned on the amounts deducted" "to the detriment of the Plan and its participants." Id. at ¶ 49.

Notably, this case is one of numerous recent cases filed across the country challenging various retirement plan administrators' use of forfeited assets to reduce their own contributions or expenses instead of offsetting administrative costs to plan participants. See, e.g., McManus v. Clorox Co., No. 4:23-CV-05325-YGR, 2025 WL 732087, at *1 (N.D. Cal. Mar. 3, 2025) ("This case presents a novel interpretation of ERISA on which there is no binding authority. Reasonable minds can differ, and several district courts do."). Since fall 2023, more than 30 putative class action lawsuits have been filed alleging that the use of forfeitures to offset employer contributions

violates ERISA. See Monica I. Perkowski et al., Expert Insights—an Emerging Trend in ERISA Class Action Litigation: 401(k) Forfeiture Suits, Wolters Kluwer Emp. L. Daily, 2025 WL 339400. "These cases are still in their early stages with none reaching final judgment and only a handful of mixed decisions on motions to dismiss." Id.

**B. Procedural History**

On August 22, 2025, plaintiffs filed this putative class action Complaint, alleging eight counts pursuant to ERISA. See generally, [Dkt. No. 1]. The following seven causes of actions are brought against all defendants: (1) breach of the fiduciary duty to act in accordance with plan documents, 29 U.S.C. § 1104(a)(1)(D); (2) breach of the fiduciary duty of loyalty, 29 U.S.C. § 1104(a0(1)(A); (3) breach of the fiduciary duty of prudence, 29 U.S.C. § 1104(a)(1)(B); (4) breach of the anti-inurement provision, 29 U.S.C. § 1103(c)(1); (5) and (6) prohibited transactions between the plan and a party in interest (RTX and/or UTC), 29 U.S.C. § 1106(a)(1); (7) prohibited transactions by the fiduciary dealing in assets of the Plan in its own interest, 29 U.S.C. § 1106(b)(1). Id. at ¶¶ 64-124. The Complaint also asserts an eighth cause of action against RTX only for failure to monitor fiduciaries of the Plan. Id. at ¶¶ 125-132.

Defendants have moved to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) ("Motion to Dismiss"). [Dkt. No. 23]. In a footnote in their Motion to Dismiss, defendants asserted that plaintiffs' allegations that "'[d]efendants have never used any forfeited funds' to pay Plan expenses" would not have evidentiary support following "discovery that will show that forfeitures also were used to pay administrative expenses." [Dkt. No. 24] at 2 n.2. The Court heard oral arguments on defendants' Motion to Dismiss on November 21, 2025. [Dkt. No. 39]. During that hearing, defendants represented that—contrary to the allegations in plaintiffs' Complaint—defendants have used forfeitures to pay a portion of the Plan's administrative expenses. [Dkt. No.

6

51] Tr. 6:8-7:15; see also [Dkt. No. 63] at 2. In spite of this representation, plaintiffs argued that the Complaint should not be dismissed "if [d]efendants had used but some portion of forfeitures to pay Plan expenses." Id.; see also [Dkt. No. 51] Tr. 9:1-10:2. Following the hearing, the parties filed a Joint Supplemental Brief Regarding the Motion to Dismiss ("Joint Supplemental Brief"), in which both parties "agree that, for purposes of the Motion to Dismiss, the Court may accept as true that [d]efendants did use forfeitures to pay a portion of the Plan's expenses for the period 2022-2025."[8] [Dkt. No. 63] at 2. Plaintiffs continue to assert that their Complaint "do[es] not rest on the allegations that [d]efendants never used forfeitures to pay a portion of the Plan expenses[,]" and that this stipulation does not moot their claims. Id. at 2-3. Defendants maintain that plaintiffs' Complaint should be dismissed. Id. at 3.

## II. STANDARD OF REVIEW

A complaint should be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must set forth sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face" and not merely speculative. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); see Goldfarb v. Mayor & City Council of Baltimore, 791 F.3d 500, 508 (4th Cir. 2015). A Court must "assume that the facts alleged in the complaint are true and draw all reasonable inferences in the plaintiff's favor." Burbach Broad. Co. of Del. v. Elkins Radio Corp., 278 F.3d 401, 406 (4th Cir. 2002). But it need

---

[8] The parties' Joint Supplemental Brief asserted that defendants produced a spreadsheet to plaintiffs showing that for the years 2022-2025 during the Class Period, a portion of forfeitures were used to pay Plan expenses; both parties agree that this spreadsheet is a business record. [Dkt. No. 63] at 2. The spreadsheet "does not address whether forfeitures were used to pay Plan expenses in 2019-2021, during the Class Period." Id.

not adopt the plaintiff's unwarranted inferences or legal conclusions. Iqbal, 555 U.S. at 678; Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

## III. ANALYSIS

### A. Count I: Breach of ERISA Duty to Act in Accordance with Plan Documents

ERISA requires a fiduciary to discharge its duties "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of" ERISA. 29 U.S.C. § 1104(a)(1)(D). Plaintiffs assert that defendants' allocation of forfeitures was in conflict with Plan documents. Citing to Section 5.13 of the Plan, plaintiffs allege that "the Plan expressly requires that some forfeitures be used to pay administrative expenses[,]" and that plaintiffs "seek only what the Plan promises: 1) that [d]efendants use some portion of the Plan's forfeitures to pay administrative expenses, and (2) that [d]efendants allocate forfeitures between their two mandated uses consistent with ERISA's directives." [Dkt. No. 27] at 12. Furthermore, plaintiffs assert that Section 5.13 of the Plan requires that all forfeitures under the Plan must be used at year's end, and defendants' failure to timely exhaust forfeitures constituted a breach of their fiduciary duty under ERISA § 1104(a)(1)(D). [Dkt. No. 1] at ¶¶ 64-71. Specifically, plaintiffs allege that defendants left the following amounts of unallocated forfeitures from 2019 to 2023:

| Year | Amount of Unallocated Forfeitures at Year's End |
|------|--------------------------------------------------|
| 2019 | $1,500,000.00 |
| 2020 | $2,400,000.00 |
| 2021 | $3,400,000.00 |
| 2022 | $4,200,000.00 |
| 2023 | $6,600,000.00 |

[Dkt. No. 1] at ¶ 52.[9]

Following defendants' representation at the Court's November 21, 2025 hearing and the parties' Joint Supplemental Brief, both parties agree that "[d]efendants did use forfeitures to pay a portion of the Plan's expenses" pursuant to Section 5.13 of the Plan.[10] [Dkt. No. 63] at 2. Plaintiffs nevertheless argue that Count I should not be dismissed because their claim for relief is "premised on [d]efendants leaving forfeitures unallocated despite the Plan's express language requiring forfeitures to be used to defray plan administrative expenses and future employer contributions." Id. at 3. Specifically, plaintiffs assert that Section 5.13 of the Plan requires that "all forfeitures must be used, including to pay administrative expenses" by each "year's end[,]" and defendants' failure to timely exhaust forfeitures was a violation of the Plan. [Dkt. No. 27] at 5-6 (emphasis in original).

But as defendants correctly note, "there is no provision in the Plan Document that requires forfeitures be used by the end of the year[.]" [Dkt. No. 24] at 12; see also [Dkt. No. 51] Tr. 12:12-15 (plaintiffs' counsel confirming that there is no "time frame in the plan on that."). Instead, Section 5.13 of the Plan states that "all forfeitures" must be used for the purposes specified in the Plan; both parties have now agreed that they are. The lack of a temporal limit in the relevant Plan provisions makes Buescher N. Am. Lighting, Inc., which plaintiffs rely on for legal support, inapposite. See [Dkt. No. 27] at 5-6. Although the Buescher court found that defendants' "failure to use forfeitures in a timely manner" was a violation of ERISA duties, 791 F.Supp.3d 873, 979 (C.D. Ill. 2025), the plan at issue in Buescher, unlike the Plan before this Court, contained express

_____

[9] Plaintiffs assert that information for 2024 is not currently available to plaintiffs. [Dkt. No. 1] at 11.

[10] Furthermore, during the Court's November 21, 2025 hearing, defendants asserted that during the six-year class period, defendants used around 25 percent of forfeitures towards administrative expenses. [Dkt. No. 51] Tr. at 6:8-7:14.

language that any remaining forfeitures "will be reallocated[.]" Id. at 893; see also [Dkt. No. 51] Tr. 13:7-13 ("[T]he case that is relied upon by the plaintiffs, the Buescher case out of the Central District of Illinois . . . [had] a plan document that had specific language that said you needed to use the forfeitures by the end of that plan year. . . . We do not have that plan . . . here."). This alone defeats plaintiffs' claim; however, defendants' arguments are further bolstered by regulatory guidance from the United States Department of Treasury ("Treasury Department") and the "Internal Revenue Service ("IRS"), which confirms that forfeitures do not have to be used by year's end, but can be used in the following year.[11] See, e.g. [Dkt. No. 24-5], Use of Forfeitures in Qualified Retirement Plans, 88 Fed. Reg. 12282-01 at 12284; [Dkt. No. 27-1], Ex. A at 4, IRS Publication 4278-B (2010). Accordingly, defendants' allocation of forfeitures does not violate the Plan, and Count I will be dismissed.

**B. Counts II and III: Breach of the ERISA Fiduciary Duties of Loyalty and Prudence**

ERISA "imposes three broad duties on ERISA fiduciaries: (1) the duty of loyalty, which requires that 'all decisions regarding an ERISA plan ... be made with an eye single to the interests of the participants and beneficiaries'; (2) the 'prudent person fiduciary obligation,' which requires a plan fiduciary to act 'with the care, skill, prudence, and diligence of a prudent person acting under similar circumstances'; and (3) the exclusive benefit rule, which requires a fiduciary to 'act for the exclusive purpose of prov[id]ing benefits to plan participants.'" Peters v. Aetna Inc., 2 F. 4th 199, 228 (4th Cir. 2021) (quoting James v. Pirelli Armstrong Tire Corp., 305 F.3d 439, 448–

---

[11] Plaintiffs, in their Response to Defendants' Motion to Dismiss ("Opposition"), cite to the aforementioned 2010 IRS Publication to try to support their argument that forfeitures "must be used or allocated in the plan year incurred." [Dkt. No. 27] at 5; see also Buescher, 791 F. Supp. 3d at 893-94. Although the IRS Publication states that forfeitures must be timely used, it also states that forfeitures can be used in the "immediately succeeding plan year." [Dkt. No. 27-1], Ex. A at 5. Plaintiffs' view on the publication is erroneous.

49 (6th Cir. 2002)). Plaintiffs argue that defendants breached their fiduciary duty of loyalty when they used "Plan assets for the purpose of reducing RTX and UTC's own contributions to the Plan, saving RTX and UTX millions of dollars each year at the Plan's and its participants' expense." [Dkt. No. 1] at ¶ 77. They further argue that defendants breached their duty of prudence when they "utilized an imprudent and flawed process . . . to determine which use of the Plan's forfeited funds was in the best interest of the Plan's participants." Id. at ¶ 86.

As a preliminary matter, although the duties charged to an ERISA fiduciary are "the highest known to the law[,]" Tatum v. RJR Pension Inv. Comm., 761 F.3d 346, 356 (4th Cir. 2014), such duties are "fulfilled where the fiduciary ensures that participants have received their promised benefits[.]" Garner v. Northrop Grumman Corp., No. 1:25-CV-00439 (AJT/WEF), 2025 WL 3488657 (E.D. Va. Dec. 4, 2025) (citing Hutchins v. HP Inc., 767 F. Supp. 3d 912, 923 (N.D. Cal. 2025)). In other words, "ERISA 'does not create an exclusive duty to maximize pecuniary benefits.'" Sievert v. Knight-Swift Transportation Holdings, Inc., 780 F. Supp. 3d 870 (D. Ariz. 2025); see also Gagliano v. Reliance Standard Life Ins. Co., 547 F.3d 230, 239 (4th Cir. 2008) ("ERISA requires the Plan be administered as written and to do otherwise violates not only the terms of the Plan but causes the Plan to be in violation of ERISA."); Foltz v. U.S. News & World Rep., Inc., 865 F.2d 364, 373 (D.C. Cir. 1989) (holding that ERISA's requirement that the fiduciary "'provid[e] benefits to participants and their beneficiaries creates no exclusive duty of maximizing pecuniary benefits. Under ERISA the fiduciaries' duties are found largely in the terms of the plan itself."); Bennet v. Conrail Matched Sav. Plan Admin. Comm., 168 F.3d 671, 677 (3d Cir. 1999) (citing Hughes Aircraft Co. v. Jacobson, 525 U.S. 432, 445-47 (1999) ("ERISA does not confer substantive rights on employees; rather it ensures that they will receive those benefits that the employers have guaranteed to them.")).

11

Against this legal backdrop, plaintiffs' arguments are unpersuasive in light of the parties' agreement that "[d]efendants did use forfeitures to pay a portion of the Plan's expenses" pursuant to the Plan. [Dkt. No. 63] at 2. As discussed above, Section 5.13 of the Plan provides that "all forfeitures . . . shall be used to reduce future Employer Contributions . . . and to pay administrative expenses in accordance with Section 11.4 of the Plan[.]" [Dkt. No. 24-2] at 25. And it is now undisputed that defendants "administered" the Plan "as written" and used forfeitures to reduce employer contributions and to pay administrative expenses during the relevant class period. Gagliano, 547 F.3d at 239; see supra, at Section I(B). On these facts, plaintiffs have failed to plausibly allege that defendants breached their fiduciary duties in violation of ERISA.

Nevertheless, plaintiffs argue that even if defendants were acting in accordance with the Plan, plaintiffs' claims continue to stand because they derive from defendants' "discretionary use of a significant percentage of forfeitures to benefit the companies rather than the participants[.]" [Dkt. No. 63] at 2. According to plaintiffs, "even if [d]efendants used a portion of forfeitures to pay expenses in a given year, they still violated ERISA if they used yet other forfeitures to defray employer contributions (for the benefit of the companies), instead of using such forfeitures to pay expenses that were otherwise charged to the participants. This is true even if a nominal, or small, amount of forfeitures must have been used to defray employer contributions under the Plan's express language." Id. Plaintiffs assert that the Plan, "when read in conjunction with ERISA's fiduciary duty statutes," requires that outcome. [Dkt. No. 27] at 12 (quoting McManus, 2025 WL 732087, at *4 n.6).

Despite plaintiffs' assertions to the contrary, [Dkt. No. 27] at 11-14, this reading of the Plan would require defendants to "provide Plan participants with more benefits than the Plan documents set out." Hutchins, 767 F. Supp. 3d at 925 (emphasis in original). ERISA does not

12

authorize plan fiduciaries to do that. See Wright v. Oregon Metallurgical Corp., 360 F.3d 1090, 1100 (9th Cir. 2004) ("ERISA requires fiduciaries to comply with a plan as written unless it is inconsistent with ERISA."). Under plaintiffs' theory, "in every plausible instance where [a fiduciary] would be given the option between using forfeited funds to pay administrative costs or reduce employer contributions, the fiduciary would always be required to choose to pay administrative costs."[12] Sievert, 789 F.Supp.3d at 878 (quoting Hutchins, 767 F. Supp. 3d at 923). Plaintiffs' interpretation, which reads as a prioritization of using forfeitures to pay for administrative expenses instead of for reducing employer contributions into the Plan, is both unsupported by the language of the Plan, and the principles of ERISA.[13] See [Dkt. No. 30] at 2-3.

---

[12] Plaintiffs argue that there are certain situations where forfeitures can be used to reduce employer contributions: namely, where "an employer might not be able to meet its contribution obligations." [Dkt. No. 27] at 10. But again, as other federal courts have held, such a strict reading is both unsupported by the plain language of the Plan and by ERISA. See, e.g., Cano v. Home Depot, Inc., No. 1:24-CV-03793-TRJ, 2025 WL 2589567, at *5 (N.D. Ga. Aug. 26, 2025), appeal dismissed, No. 25-13158-JJ, 2025 WL 3700579 (11th Cir. Dec. 1, 2025) ("Though [plaintiff] suggests that limited circumstances, such as when the 'value of forfeitures exceeds the Plan's administrative expenses,' would permit use of forfeited funds for uses other than defraying administrative costs, her strict reading removes all discretion, care, prudence, or consideration of the circumstances and the Plan documents from [the company]'s fiduciary decision making. This is inconsistent with the plain language of the statute." (citation omitted)); Hutchins, 767 F. Supp. 3d 912, 926-27 (N.D. Cal. 2025) (rejecting argument that an employer can only use forfeitures to offset contributions where a company is at risk of defaulting on its contribution obligations).

[13] Plaintiffs cite to a number of cases in support of their arguments, but such reliance is misguided. For example, although plaintiffs cite to Rodriguez v. Intuit Inc., 744 F. Supp. 3d 935 (N.D. Cal. 2024), this case is distinguishable from the facts at hand. As several courts have already observed, in Rodriguez, the court found that the employer may have violated a provision of a plan document that did not allow forfeitures to be used to reduce one of three different types of employer contributions and held that the defendant violated the terms of the plan and breached its fiduciary duty of loyalty. See, e.g., Cano, 2025 WL 2589567, at *4. Plaintiffs' reliance on Perez-Cruet v. Qualcomm Inc., No. 23-CV-1890-BEN (MMP), 2024 WL 2702207 (S.D. Cal. May 24, 2024), reconsideration denied, No. 23-CV-1890-BEN (MMP), 2024 WL 3798391 (S.D. Cal. Aug. 12, 2024), is similarly misplaced because that court found that defendants' use of forfeitures violated the express terms of the plans at issue. Wright v. JPMorgan Chase & Co, No. 2:25-CV-00525-JLS-JC, 2025 WL 1683642, at *5 (C.D. Cal. June 13, 2025). The three other cases that plaintiffs cite to rely on Rodriguez and Perez-Cruet in denying motions to dismiss in

Plaintiffs have failed to allege a plausible claim that defendants breached their fiduciary duties in violation of ERISA. Therefore, Counts II and III will be dismissed.[14]

## C. Count IV – ERISA's Anti-Inurement Provision

ERISA's anti-inurement provision states that "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan." 29 U.S.C. § 1103(c)(1). The Supreme Court has interpreted this language as "focus[ing] exclusively on whether fund assets were used to pay pension benefits to plan participants." Hughes Aircraft, 525 U.S. at 442; see also Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon, 541 U.S. 1, 22 (2004) ("The provision demands only that plan assets be held for supplying benefits to plan participants."). In addition, claims under the anti-inurement provision usually require reversion or diversion of plan assets back to the sponsor. See Aldridge v. Lily-Tulip, Inc. Salary Ret. Plan Benefits Comm., 953 F.2d 587, 592 n.6 (11th Cir. 1992) ("The [anti-inurement provision] can only be violated if there has been a removal of plan assets for the benefit of the plan sponsor or anyone other than the plan participants."); Maez v. Mountain States Tel. & Tel., Inc., 54 F.3d 1488, 1506 (10th Cir. 1995) (finding that a plaintiff failed to state a claim under the anti-

---

forfeiture-based cases and allowing those claims to go forward. See [Dkt. No. 30] at 6. Here, by contrast, this Court has found that defendants have not violated the express provisions of their Plan.

[14] Defendants' Motion to Dismiss provides two other independent reasons why plaintiffs' breach of fiduciary duty claims fail: (1) "[t]he claims conflict with and seek to upend 60 years of guidance issued by federal legislators and regulators[;]" and (2) "[t]he claims are otherwise implausible" because they rest on the premise that "there is an inherent problem with forfeitures being used to reduce employer contributions[.] [Dkt. No. 24] at 6-10, 12-15. Because the Court has found that these claims must be dismissed because defendants have fulfilled their fiduciary duties, it need not address these additional arguments.

inurement provision where "no such reversion, diversion, or any sort of payment of surplus assets . . . is alleged.").

Plaintiffs' Complaint does not allege any facts showing that defendants have removed any of the forfeited funds from the Plan. Instead, plaintiffs argue that "by deciding to use [Plan forfeitures] . . . for the purpose of saving the companies tens of millions of dollars in contribution expenses[,]" defendants "caused the assets of the [P]lan to inure to the benefit of RTX and UTC in violation of [ERISA]." [Dkt. No. 1] at ¶ 95. As defendants respond, plaintiffs do not allege that any of the forfeited assets at issue ever left the Plan, [Dkt. No. 24] at 16, or that defendants used Plan assets "for a purpose other than to pay [their] obligations to the Plan's beneficiaries." Hughes Aircraft, 525 U.S. at 442-43. Here, it is undisputed that the forfeitures remained in the Plan and were used: (1) to restore the accounts of participants who were reemployed; (2) to cover part of future employer contributions to participants; and (3) to pay some of the Plan's administrative costs. See [Dkt. No. 24] at 16. Although defendants also benefited from the use of forfeitures to reduce employer contributions, such allegations of "indirect" benefits to an employer are "insufficient to state a claim under the anti-inurement provision."[15] Hutchins, 737 F. Supp. at 864 (citing Hughes Aircraft, 525 U.S. at 445). This dooms plaintiffs' claim; accordingly, Count IV—the anti-inurement claim—will be dismissed.

---

[15] Plaintiffs cite several cases in an effort to support their argument that "Plan assets illegally inure to the benefit of an employer where . . . the employer uses them to satisfy obligations that it would otherwise owe the Plan." [Dkt. No. 27] at 18-19. These cases are inapplicable to the facts at hand. For example, in Chao v. Anderson, the Court held that defendants violated ERISA's anti-inurement provision when they used plan forfeitures to offset their civil liability for the amounts they personally owed regarding employee contributions. No. 1:06CV433 JCC, 2007 WL 1448705, at *1 (E.D. Va. May 9, 2007). And in Holland v. Arch Coal, Inc., the D.C. Circuit found an anti-inurement violation regarding the use of a letter of credit in an ERISA-covered plan. 947 F.3d 812 (D.C. Cir. 2020). Both of these cases involved the use of plan assets to benefit an employer outside of plan provisions and are therefore not analogous to this case.

**D. Counts V through VII – ERISA Prohibited Transactions**

ERISA provides that a fiduciary:

[S]hall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect—

> (A) sale or exchange, or leasing, of any property between the plan and a party in interest;
>
> (B) lending of money or other extension of credit between the plan and a party in interest;
>
> (C) furnishing of goods, services, or facilities between the plan and a party in interest;
>
> (D) transfer to, or use by or for the benefit of a party in interest, of any assets of the plan; or
>
> (E) acquisition, on behalf of the plan, of any employer security or employer real property in violation of section 1107(a) of this title.

29 U.S.C. § 1106(a)(1).

Similarly, ERISA prohibits certain "[t]ransactions between plan and fiduciary," including where a fiduciary "deal[s] with assets of the plan in his own interest or for his own account." Id. at § 1106(b)(1).

Plaintiffs allege that by using the Plan's forfeited funds to reduce employer contributions, defendants "caused the Plan to engage in transactions that constituted a direct or indirect exchange of existing Plan property to RTX and/or UTC" for their benefit; and "caused the Plan to engage in transactions that constituted a direct or indirect furnishing of goods[,] services, or facilities between the Plan and the Plan's service providers" in violation of § 1106(a)(1). [Dkt. No. 1] at ¶¶ 104, 111-113. Plaintiffs also allege that defendants' use of the Plan's forfeitures was a prohibited transaction that "dealt with the assets of the Plan in their own interest and for their own account" in violation of § 1106(b)(1). Id. at ¶ 121.

16

Under the express terms of both ERISA provisions, to allege a violation of § 1106(a) or (b), a plaintiff must allege an unlawful "transaction." See Lockheed Corp. v. Spink, 517 U.S. 882, 888 (1996). In Lockheed, the Supreme Court held that the payment of benefits is not a "transaction" under the prohibited transactions provision, and that ERISA's prohibited transaction provisions targeted "commercial bargains that present a special risk of plan underfunding[.]" Id. at 892-93. The Supreme Court emphasized that prohibited transactions "involve uses of plan assets that are potentially harmful to the plan." Id. at 893.

Plaintiffs have failed to allege a plausible prohibited transaction. As discussed above, the Complaint's allegations show that forfeited amounts remain Plan assets and are reallocated to other Plan participants as part of future employer contributions. Although plaintiffs allege that this reallocation reduces the amount that defendants contribute as matching contributions in the future, this is not a prohibited transaction for purposes of § 1106. See Hutchins, 737 F. Supp. 3d at 868. "An intra-plan transaction, like forfeiture reallocation, is unlike a sale or leasing of property to a third-party."[16] Dimou v. Thermo Fisher Sci. Inc., No. 23-CV-1732 TWR (JLB), 2024 WL 4508450, at *11 (S.D. Cal. Sept. 19, 2024). Furthermore, defendants' allocations of forfeited funds are not similar to the types of commercial transactions contemplated by Congress because they do not put the Plan at "a special risk" of being underfunded. Lockheed, 517 U.S. at 893.

Plaintiffs' arguments to the contrary are unavailing. First, although plaintiffs argue that Lockheed should be narrowly read to say only that "the paying out of plan benefits to plan

---

[16] In arguing that they have pleaded a transaction under ERISA § 1106(a), plaintiffs attempt to recharacterize defendants' use of forfeitures as a "substitution" for defendants' employer contributions, and allege that "[d]efendants caused Plan participants to pay fees to the Plan's service providers that they would not have otherwise had to pay." See [Dkt. No. 27] at 16-17. These arguments do not allege anything other than an "intra-plan transaction" and therefore fall outside the scope of ERISA § 1106(a).

participants is not a prohibited transaction under § 1106," [Dkt. No. 27] at 16 (emphasis in original), this argument ignores the careful statutory interpretation undertaken by the Supreme Court in clarifying the meaning of a "prohibited transaction" under § 1106(a). Lockheed, 517 U.S. at 892-93. And it ignores the numerous federal courts that have concluded that reallocating forfeitures to other participants as employer contributions does not "present a special risk of plan underfunding" or otherwise harm the plan. Id. at 893. See, e.g., Hutchins, 737 F.Supp.3d at 868; Dimou, 2024 WL 4508450, at *11. Second, to the extent that plaintiffs rely on Commissioner of Internal Revenue v. Keystone Consolidated Industries, Inc., that case is not applicable here because it dealt with a traditional commercial transaction. See 508 U.S. 152, 158-59 (1993). In Keystone, the defendant contributed truck terminals and other real property to satisfy its funding obligations for a plan. Id. The Supreme Court held that this was a "sale or exchange" under the Internal Revenue Code because it involved "the transfer of property in satisfaction of a debt." Id. at 159. Third, plaintiffs argue that ERISA § 1106(b)(1) is "broader in scope" than other ERISA prohibited transaction provisions because it does not require allegations of a "transaction." [Dkt. No. 27] at 17. That argument is not supported by the text of § 1106(b)(1) and case law, and has been rejected by several federal courts.[17] See, e.g., Polanco v. WPP Grp. USA, Inc., No. 24-CV-9548 (JGK), 2025 WL 3003060, at *10 (S.D.N.Y. Oct. 27, 2025) (noting that 29 U.S.C. § 1106(b) is titled "[t]ransactions between plan and fiduciary" and finding that the Lockheed decision applies with "equal force" to § 1106(b)); Wright, 360 F.3d at 1100; Dimou, 2024 WL 4508450, at *11.

---

[17] This Court notes one decision in which a federal court declined to apply Lockheed to ERISA § 1106(b)(1): Buescher, 791 F. Supp. 3d 873. But the Buescher court nevertheless found that the "movement of funds within the Plan [did] not fit neatly within the plain meaning of 'transaction'" and declined to take a broader view of the meaning of "transaction" under § 1106(b)(1) because it would "fully subsume the fiduciary duties." 791 F. Supp. 3d at 897 (emphasis in original).

Defendants' Motion to Dismiss is granted with respect to plaintiffs' prohibited transaction claims. Because Counts V through VII do not allege cognizable claims that defendants engaged in prohibited transactions, these Counts will be dismissed.

**E. Count VIII – ERISA Duty to Monitor**

Finally, plaintiffs' claim for a breach of the duty to monitor will be dismissed along with their other claims, as it is "wholly derivative" of plaintiffs' underlying claims in Counts I through VII. Naylor v. BAE Systems, Inc., No. 1:24-CV-00536 (AJT/WEF), 2024 WL 4112322, at *9 (E.D. Va. Sept. 5, 2024) (citing Tullgreen v. Booz Allen Hamilton, Inc., 2023 WL 2307615, 2023 WL 2307615, at *8 (E.D. Va. Mar. 1, 2023) (dismissing monitoring claim where plaintiff failed to allege an underlying breach of fiduciary duty)).

## IV. CONCLUSION

For the reasons explained in this Memorandum Opinion, defendants' Motion to Dismiss, [Dkt. No. 23], will be granted by an Order to be issued with this Memorandum Opinion.

Entered this 22 day of January, 2026.

Alexandria, Virginia

/s/

Leonie M. Brinkema
United States District Judge

19